## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

DELORES McDANIEL,                    )
                                     )
            Plaintiff,               )
                                     )
v.                                   )        Case No. CIV-11-373-M
                                     )
PIEDMONT INDEPENDENT SCHOOL          )
DISTRICT NO. 22,                     )
                                     )
            Defendant.               )

## ORDER

This case is scheduled for trial on the Court's May 2012 trial docket.

Before the Court is defendant's Motion for Summary Judgment, filed March 1, 2012.  On

March 22, 2012, plaintiff filed her response.  Defendant has not filed a reply.  Based upon the

parties' submissions, the Court makes its determination.

I.      Introduction[1]

Plaintiff was employed with defendant for twelve years.  In 2006, plaintiff became

defendant's human resources manager and also worked as defendant's account payable clerk.

Defendant's superintendent determined plaintiff's duties and served as her supervisor and evaluator.

In 2007, plaintiff suffered a heart attack and learned that she has coronary artery spasms.

After approximately one week off from work, plaintiff returned to work.  Plaintiff informed the

superintendent that she was only allowed to work when she would not be subjected to stress.

Jerrie Duffy ("Duffy") was defendant's business manager during the duration of plaintiff's

employment with defendant.  In early March 2010, Duffy discovered that due to the way plaintiff

was entering the payroll, Mike Hyatt ("Hyatt"), defendant's superintendent of Piedmont Public

---

[1]The facts in this introduction are set forth in the light most favorable to plaintiff.

Schools, was paid twice for his insurance benefits each month.  For approximately six years, plaintiff's mistakes caused Hyatt to be overpaid.  At a school board meeting held on March 11, 2010, the superintendent and the Board of Education agreed that Hyatt would repay defendant for the overpayments from the amount he was due to receive for his accrued and unused vacation time.

On the March 12, 2010 payday, Duffy took her check from a manila envelope in plaintiff's office.  Plaintiff went to Duffy's office and asked her to sign for it.  According to plaintiff, Duffy replied,  "I am not signing shit for you.  You saw me take the check, you sign it."  Duffy then pounded her hands on her desk, leaned forward, and yelled, "I saved your ass last night and you didn't even say thank you . . . You have treated me like shit ever since you went to work here and I am not taking it anymore.  I'm through."  Duffy and the receptionist, Karen Brown ("Brown"), then left to attend to a school event.

While Duffy and Brown were gone, a teacher delivered some money for a deposit.  Plaintiff placed the money in the safe and stuck a sticky note on the receptionist's desk informing her that the "money is in the safe."  When Duffy returned, she entered plaintiff's office and threw the sticky note at plaintiff.  Duffy pounded her hands on plaintiff's desk, leaned towards her, and yelled, "in case you have forgotten I am the treasurer and all money comes through me."  She then slapped the papers out of plaintiff's hands.

Plaintiff told Duffy to leave her office.  Duffy pounded the desk again and said, "this is a public office and I will sit my fat ass down in here all day if I want to."  Duffy then picked up some of the papers that were on the floor, placed them on plaintiff's desk, and left the room.

After her interaction with Duffy, plaintiff left the office to deliver payroll checks. During that time, plaintiff felt chest pressure.  Plaintiff drove home, took nitroglycerin, then called Hyatt to

report the incident.  The following day, plaintiff filed a police report, but the District Attorney declined to press criminal charges.

On March 14, 2010, plaintiff requested that defendant conduct a formal investigation into the incident.  Assistant Superintendent Jacky Parish ("Parish") interviewed plaintiff, Duffy, Brown, Nash LeGrand, and Lara Davis about the incident.  Parish concluded that while Duffy should not have slapped the papers out of plaintiff's hands, the incident did not create a hostile or unsafe work environment.  On March 30, 2010, Hyatt called plaintiff to inform her about the results of the investigation.  Plaintiff asked to be moved to another building, but Hyatt informed her that the personnel files could not be removed from the administration building and, therefore, she could not work from another building.

On March 31, 2010, Hyatt and Parish reviewed the investigation with plaintiff.  Hyatt and Parish told plaintiff that they would permit her to move to a different school building until July 1, then transfer to another position as an administrative assistant at the same rate of pay.  On April 1, 2010, plaintiff began to work from defendant's middle school building.

On April 9, 2010, James White ("White") – defendant's new superintendent hired to replace Hyatt following his June 30, 2010 retirement – told plaintiff that he would not agree to create a secretarial position for plaintiff at the same rate of pay.  White told plaintiff that her options for the following school year were to report to work and perform her assigned job duties at the administration building or request to transfer to a vacant position.  Plaintiff requested to be moved to a different office within the administration building, but, at that time, White did not agree to her requests.

On June 8, 2010, defendant offered to move plaintiff to a different office within the

administration building or, in the alternative, permit plaintiff to transfer to a different position. The available positions were paraprofessional positions that were a lower salary than her salary at the time. On or about June 13, 2010, plaintiff resigned from her position with defendant.

II.    Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.   Discussion

A.    Disability Discrimination Claim

In order to establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that she (1) is a disabled person as defined by the ADA; (2) is qualified, with or

4

without reasonable accommodation, to perform the essential functions of the job held or desired, and

(3) suffered discrimination by an employer or prospective employer on the basis of that disability.

*See E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011).

       1.     Qualified Person to Perform Essential Functions

Plaintiff asserts that she satisfactorily performed her job duties. Defendant contends that

plaintiff was not a qualified person performing the essential functions of her job because she did not

report to work at the administration building.

In an ADA discrimination claim,

> [t]he plaintiff bears the burden of showing she is able to perform the essential functions of her job. "Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires." Evidence considered in determining whether a particular function is essential includes: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the work experience of past incumbents in the job.

*Mason v. Avaya Comm'cn, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004) (internal citations omitted).

Furthermore, the Tenth Circuit has stated that "[i]n cases arising under the ADA, [courts] do not sit

as a super personnel department that second guess employers' business judgments." *Id.* at 1122

(internal quotations omitted). To that end, courts should be "reluctant to allow employees to define

the essential functions of their positions based solely on their personal viewpoint and experience."

*See id.* at 1122.

Having carefully reviewed the parties' submissions, and viewing the evidence in the light

most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, the Court finds

that plaintiff has not satisfied her burden of showing that she was able to perform the essential functions of her job. Based upon the evidence as to defendant's judgment of plaintiff's essential functions, the Court finds that attendance at the administration building was essential. Specifically, Hyatt initially informed plaintiff that the personnel files could not be removed from the administration building and that she could not work from the middle school building. The evidence further indicates that Hyatt eventually permitted plaintiff to move to a different school building only until the end of defendant's fiscal year, then transfer to another position. Additionally, the new superintendent, White, also required plaintiff to work from the administration building. Thus, a rational jury would find that defendant's judgment of plaintiff's essential functions included attendance at the administration building.

Moreover, a reasonable jury would find that evidence presented regarding the consequences of not requiring the incumbent to work from the administration building further demonstrates that attendance at the administration building is an essential function of plaintiff's position. Specifically, defendant asserts that the incumbent would have to travel between the administration building and the middle school building to perform the functions of her job. Further, the superintendent is not located in the middle school building and, therefore, would have to take the time to supervise plaintiff from a different work site. While plaintiff has presented evidence that the middle school building was less than a ten minute walk or five minute drive from the administration building, the Court finds that the consequence of the incumbent working from the middle school building weighs in favor of granting summary judgment.

Lastly, in considering the remaining factors in determining whether attendance is an essential function of plaintiff's position, and viewing all reasonable inferences in plaintiff's favor, the Court

6

finds that the plaintiff fails to demonstrates that attendance at the administration building was not an essential function.  In particular: there is no submitted evidence of a written job description prepared before advertising or interviewing applicants for plaintiff's position; the parties do not dispute the amount of time plaintiff spent at the administration building, then at the middle school building; and the parties have not submitted evidence regarding past incumbents.[2]  Thus, a rational jury would infer that attendance at the administration building is an essential function.

Therefore, the Court finds that plaintiff was not a qualified person performing the essential function of her job.

### 2.    Failure to Accommodate

Plaintiff asserts that defendant did not provide a reasonable accommodation because it did not permit her to work from the middle school building.  Defendant asserts that plaintiff's request was not reasonable on its face.

"To defeat an employer's motion for summary judgment, the employee must first demonstrate that an accommodation appears reasonable on its face."  *Mason*, 357 F.3d at 1122. Once the employee has made this showing, the employer then must show special, typically case-specific, circumstances that demonstrate undue hardship in the particular circumstances.  *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002).  "Undue hardship" means an action requiring significant difficulty or expense when considered in light of various factors, such as the nature and cost of the accommodation and the impact of the accommodation upon the operation of the company. *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1178 (10th Cir. 1999).

---

[2]While both parties assert that the "current" incumbents work in the administration building, the parties are silent as to past incumbents.

Here, as discussed in Part III.A.1, a rational jury would find that said accommodation is not reasonable because plaintiff would have to travel between the administration building and the middle school building to perform the functions of her job and because the superintendent would have to take the time to supervise from a different work site.  Based upon the discussion in Part III.A.1, a rational jury would further find that permitting plaintiff to work from the middle school building would pose an undue hardship on defendant for the reasons stated above.

Therefore, the Court finds that plaintiff has not demonstrated a reasonable accommodation.  Accordingly, the Court finds that defendant is entitled to summary judgment as to plaintiff's ADA discrimination claim.

B.    Hostile Work Environment

The Tenth Circuit has stated that a hostile work environment claim is actionable under the ADA. *Lanman v. Johnson Cnty., Kan.*, 393 F.3d 1151, 1156 (10th Cir. 2004).  However, "the ADA, like Title VII, is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'"  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) (quoting *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1265 (10th Cir. 1998)).

> For a hostile environment claim to survive a summary judgment motion, a plaintiff must show that a rational jury could find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  To evaluate whether a working environment is sufficiently hostile or abusive, we examine all the circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance.  In addition, the environment must be both subjectively and objectively hostile or abusive.

*MacKenzie v. City and Cnty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) (internal citation omitted). *See also Thomas v. Avis Rent a Car*, 408 Fed. App'x 145, 156 (10th Cir. 2011).

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, the Court finds that plaintiff has not demonstrated that her workplace was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. Specifically, a rational jury would not find that defendant or Duffy engaged in frequent discriminatory conduct. In fact, the gravamen of plaintiff's complaint is based upon her incident with Duffy and defendant's refusal to permit her to work from the middle school building. Additionally, plaintiff's previously filed work complaints do not suggest there was discriminatory intimidation, ridicule, or insults as said complaints involved radio volume, accessability of payroll software, and Duffy's delay in stamping checks.

Accordingly, the Court finds that defendant is entitled to summary judgment as to plaintiff's claim for hostile environment.

C.      Constructive Discharge

"In the context of discrimination, [c]onstructive discharge occurs when the employer *by its illegal discriminatory acts* has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Wells v. Shalala*, 228 F.3d 1137, 1146 (10th Cir. 2000) (quoting *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 534 (10th Cir. 1998)) (emphasis added). In light of the Court's finding that defendant is entitled to summary judgment against plaintiff's ADA discrimination and hostile work environment claims, the Court further finds that defendant is entitled to summary judgment as to plaintiff's constructive discharge claim.

IV.    Conclusion

Accordingly, the Court GRANTS defendant's Motion for Summary Judgment [docket no. 18].

**IT IS SO ORDERED this 11th day of April, 2012.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE